Our next case is Carnegie Institution of Washington v. Fenix Diamonds LLC, docket number 24-1804. And Counselor Goldenberg, you have reserved three minutes of your time for rebuttal, correct? Yes, Your Honor. And Counselor Leiderson, you have reserved two minutes for the cross-appeal? For the rebuttal and the cross-appeal, correct. Okay. All right. Thank you, Your Honor, and may it please the Court. The District Court abused its discretion in declaring this case exceptional and in awarding attorneys' fees and non-taxable costs against Carnegie Science for three reasons. First, plaintiffs presented reasonable infringement theories under the Court's claim constructions. While plaintiffs lost at summary judgment, their positions were not objectively baseless. Second, the Court misapplied the law regarding non-taxable costs, awarding expert fees untethered to the purported misconduct. The same purported misconduct also cannot independently support the exceptional case finding. And third, the Court unfairly held Carnegie Science jointly and severably liable for M-70's purported misconduct. The District Court's exceptional case determination and fee award should be reversed. Can I ask you about what I think is at the heart of the District Court's exceptional case finding? And that is clear meritlessness starting in July of 2020, once you had a time to digest the mid-June picture that came from India, the kind of muffin tin with a whole lot of dark around a bunch of nice, clean islands in the middle, right? And it struck me that the District Court in the claim construction had said the growth surface is wherever diamond occurs, and you lost that, and that's fine, but did not say that the only thing that can grow on the growth surface is the nice, clean diamonds, the single crystal diamonds. Later in the summary judgment ruling, the District Court did seem to say that as long as there's a lot of the polycrystal diamonds, the dark stuff in the pictures, on the whole field, that's clearly under my claim construction non-infringing, and that seems to me not what the claim language says. The claim language says you have to grow single crystal diamond on the growth surface, but it doesn't say that's the only thing you have to grow. Am I understanding what I just said to be what you're saying is the core flaw of the core finding of exceptional case? Basically yes. The difference here is we're not up here to discuss whether or not the claim construction was correct. Right. Only that your position after July, in fact, said that, although I think maybe your expert or whoever drafted his declaration used some bad language at a certain point, but he said, I think this still fits because I can carve out all the dark stuff, and I'll have eight or ten or something beautiful single crystal diamonds as long as I can do that, then I have actually grown single crystal diamond on the growth surface, even if I've grown a lot of other bad stuff. Yes, your honor. I completely agree with that assessment. And what the district court said was that the standalone diamond would have insubstantial non-monocrystalline growth, but it didn't tell us what insubstantial meant. So our expert said what you just characterized as what he said, which was that, well, to me, it's insubstantial if I can remove it, and I'll still have a diamond. That seems insubstantial because my process was successful. And that was his... Was that until the factual finding at that point? It was a factual finding as to whether or not there was infringement. The district court found against us, but that... It was a summary judgment. Yeah. Sorry.  Well, yeah. Sorry. I beg your pardon. We thought it was a factual finding. The district court said that no reasonable jury could make that finding. And, once again, we're not here to re-argue the merits of that appeal for financial reasons. They decided not to pursue it. But then they were shocked to come back and be hit with almost $3.25 million in fees over a position that they always thought, plaintiffs always thought was reasonable. So now just assuming, well, we're obviously going to hear from the other side, assuming that I do think that that core of the exceptional case finding is missing, and I'm trying to figure out what happens next. There's a bit of misconduct, and I don't think the district court said that that alone would be sufficient for the exceptional case finding. I think it did say that the... Really should have stopped in July, that that was enough even independent of the misconduct, but not the misconduct independent of the other thing. And then there's the question about the second patent, how you should have given up in a formal way earlier than you did, and the fact that you didn't give up early enough meant they did a bunch of work that they wouldn't have done. Am I right in thinking that, first of all, recalculation would be needed to figure out first whether the remaining conduct would be exceptional, make it an exceptional case, and even if it would, what work is traceable to those remaining items? Absolutely, Your Honor, and we think this could just be reversed because there's just only one reasonable outcome here, which is that if you look at those remaining items, there isn't misconduct. I'm going to start with the second patent. So the plaintiff struggled to get discovery on it. They alerted, still during the fact discovery period, they alerted the defendants that they were having trouble getting fact discovery, they were considering withdrawing it, and then a few weeks later, they made the formal declaration that they were withdrawing it via an expert report, which under this court's Elkhorn Research Standard is enough to alert everyone that the patent's out of the case. What date was the... September 18th, 2020 was the date of the declaration via the expert report. But the covenant not to sue was not until November 17th. That came later, but it wasn't required because they said, we're no longer pursuing this. Now, defendants chose to continue to pursue their invalidity case and their counterclaims of declarations of non-infringement, which they could do until the court said they no longer had standing to do. But there was no misconduct in the procedure that happened when they learned... Because, well, first of all, there's obviously no harm to defendants because they decided to move forward with their counterclaims. And also... Did any of the work that the defendants did in support of their summary judgment motion focus on infringement? They only had a few sentences. Some of that might, in fact, have not been done had you given formal notice earlier that you were withdrawing your infringement contention on that fact. Perhaps a paragraph might not have been written, Your Honor, but it's not substantial work. Most of their work with their sector 189 that appeared in the summary judgment, did summary judgment cover summary judgment... Their motion for summary judgment of invalidity? They did not move, I don't believe, for invalidity. So I think it was just a short description of why there can no longer be infringement. But their counterclaim was still alive as to infringement at that time. I'm just trying to understand what work did... And I don't think the district court has looked into this yet, but for... Anyway, not made findings, I think this is right. On what work, if... Would have been saved had you given earlier notice... Full earlier notice, I guess, of your withdrawal of the 189. One, you're not pressing it. Second, a covenant not to sue, which ultimately killed their invalidity counterclaim. Yeah, I don't think the district court made those findings. But if you look at the record, the answer is a few paragraphs of work. So it couldn't be more than a few hours of attorney time. Certainly not the large fee verdict that came. And that's even assuming that our actions were unreasonable. Which, remember, they didn't need to do that because as of September 18th, they knew that we were no longer pursuing it. It was their choice that they still chose to include it in the summary judgment motion. Can I just go back to the other patent for a minute? Going back to the first patent. The district court seems to also be relying on whether there was a reasonable argument for infringement based on the temperature limitation in claim 12. I'm wondering whether that, controlling the temperature at 20 degrees, is that an independent basis for looking at the totality of circumstances? I think that is one of the totality of circumstances that the district court relied on in finding the case exceptional. Do you disagree with that? It referenced it briefly in the order. I think even appellees have admitted in their briefing that it was not the driving factor, that it had minimal bearing, is their own terminology, on his ruling. And they didn't even move for it. That wasn't a basis in their motion for exceptional fees that they explained to the court. The court just referenced it. That wasn't the focus. I'll be honest with you. It spans a page or so. And also it's discussed in the facts section. What is the basis for knowing that it's not something that was important to the district court? I think the parties have effectively stipulated to that as one basis. I hear you with the parties. But do I just defer to the parties on how to read district court's opinion? Is that how I do my job? You, Your Honor, can certainly read the opinion. And you're more than capable of doing so. The question here, I think, regardless of this, is that there's no basis to award exceptional fees on measuring temperature in view of the claim construction. The claim construction said that you didn't need to measure temperature to control the temperature. Controlling was broader than that. Our experts said, here's some evidence of how they can control temperature by managing plasma uniformity, by placement of the diamond seeds such that the top surface uniformly interacts, by cooling of the diamonds. He gave a litany of ways you can control temperature without measuring it. Under the court's claim construction, it wasn't until summary judgment and the exceptional fee motion that suddenly the court said, oh, you have to measure temperature. There's no evidence they measure temperature. Not only do you lose, but your position was objectively baseless. So I think, putting aside, you could very well read this opinion and say that's a separate reason to find this and then overturn it because that was an abuse of discretion as well. I'd like to hit on a little bit of the other conduct, particularly the access to the factory in India. The district court seemed very angry about statements that were made saying we couldn't get in in August of 2020, when, in fact, I think all the parties acknowledged the facts, which are they did offer us a way to get in. You had to sign something saying that you understood that it was a COVID hotspot. Attorneys from the U.S. would have had to figure out how to get into India in August of 2020 or find Indian attorneys that were willing to get paid. We know from the record the Indian attorneys that represented the other side made about $6,000 for their work getting into the factory. So they would have had to find attorneys that were willing to risk their lives for $6,000. It was effectively impossible to get in. And the district court really took great anger at the way that it was framed in the briefing. But the record was quickly corrected by the other side. We didn't deny what had happened there. And the district court seemed to think that somehow we misrepresented something to the court. That was never the intention, and I don't think that that alone can support any exceptional case finding. Can you address the joint and several liabilities? Yes, Your Honor. So as an additional reason, the district court very briefly addressed joint and several liability, relied on one case, and he said, because the parties have the same counsel effectively, they're in this together, and I'm going to punish both of them. But a lot of the conduct that the district court mentioned, including presentations from M70, Carnegie Science had no knowledge of. It was the patent holder. It wasn't directing the litigation. And suddenly, the district court didn't really weigh the equities. And since then, there's been case law about how it should be weighed from the Supreme Court. So at minimum, the court should remand so that the district court would relook at that and say that Carnegie Science... There's a way to weigh the equities here and assign percentages that the district court didn't do. Thank you. I'll reserve the rest of my time. May it please the Court, Laura Liddickson, Kroll and Mooring for Phoenix Diamonds. Before I address your question to Ms. Goldenberg and to Judge Toronto, I want to remind the Court that the crux of this case is about whether or not there was an abuse of discretion here by Judge Rakoff in deciding to award an exceptional case compensation to Phoenix Diamonds. Judge Rakoff lived with this case closely for years. If you look at the docket sheet in Appendix 38, you count up the number of hearings, teleconferences, status conferences,  over 25 times. He knew these facts well. And based on that, he felt that this case was exceptional. Now, the question you asked Judge Toronto was about the claim construction, whether or not this case was really unreasonable after June 2020.  Well, so, we gave them a monthly way because to consider things.  But the NOVO declaration comes in June 2020 and the claim construction is in May 2020. And your Honor asked about the growth surface and I think that only gets half of it because there's this one claim phrase and it says growing single crystal diamond on the growth surface. So one piece of that is the growth surface construction. But the District Court at Appendix 265 through 267 also construed single crystal diamond in May 2020. And that single crystal diamond construction requires that there be insubstantial non-monocrystalline growth. Judge Soule asked about the temperature limitation. The two are tied together. I mean, I think maybe just to be absolutely clear at the risk of repeating what is already absolutely clear. The fact that there's a whole bunch surrounding the single crystal diamond that does not does not establish whether if you cut out the pieces in the center which Capano is that his name? Yes. I think Capano said that's what I would do. It's then an additional question whether in those superficially quite nice seemingly single crystal diamond there's substantial polycrystal and the district court did not find that. No, he did. He said that there has to be all of the dark in the muffin tin. He did. So the entire point of this patent is about not having that substantial non-monocrystalline growth when you grow the single crystal diamond. So when you look at the when you look at the That's not what the claim language says. The claim language says you have to grow single crystal diamond on the growth surface. That can be true if you're also growing other stuff on the growth surface. This is a process patent so if you look at the prior art which there's an image of that just to give some background of what the merits were of the Yan diamond it has the ring of non-monocrystalline growth around it. So the thing that the inventors for this patent said that they had discovered was a way to create that single crystal diamond without all that substantial non-monocrystalline growth around it. And so that's what Judge Rakoff was looking at and he was looking according to the patent you should be able to get a single crystal diamond without all of that stuff on it. And as it turns out that's not what Nova was doing. Just press back one more time and then try to remain quiet. No promises. That's not what the claim construction said. The claim construction when you combine growth surface and single crystal diamond together does in fact say that. No, it just says you have to have single crystal diamond on the growth surface even if there's a whole lot of other junk on the growth surface. I respectfully disagree, Your Honor. It says that there has to be any place where diamond is growing which is the growth surface any place that's growing in this reactor has to have non it has to have insubstantial non-monocrystalline growth. That was the district court's claim construction and when you read his opinion and he explains that in appendix 267 that all of the stuff that's growing on the diamond whether it's polycrystalline non-diamond carbon it has to be insubstantial and so Carnegie plaintiffs had that as of May and June 2020 that first appeal they dropped it.  this case was baseless as of that point and when you look at the contradictions between Capano's testimony and what the district court held in its claim construction it's really striking. Do you think the district court decision is more emphasizing that the  seems to have used the same language that he was being used in their claim construction proffer prior to claim construction when he analyzed it and said I'm not going to interpret growth surface as what the district court held. I'm going to interpret it as and whatever as is whatever is the reason    court thought this was exceptional or is it more that the district court thought going forward after claim construction was unreasonable to go forward. It was both things. He really did         granted summary judgment. One was the temperature control and the other was the growth surface. In both instances the process that Nova was using was so different from what was in the district court.    interpreted it as the surface on which diamond is grown. Any diamond. So both single crystal and diamond which can't have substantial amounts of other carbon and also anything else. Any other kind of  carbon. So Carnegie's brief tries to raise ambiguity but the district court explained everything is considered non monocrystalline growth. If you look at the table, the patent treats non-diamond growth as diamond or non-monocrystalline growth. Under temperature gradient limitation at page 34 of your red brief you say Phoenix did not rely on temperature gradient limitation to argue baselessness in its exception of case motions. No, we did not. But I wanted to highlight they're linked together. Because Novo didn't measure the  gradient it wasn't going to get the high quality single crystal diamond without the non- monocrystalline growth on it. I thought Novo               kinds of things referred to and that ought  create a trial facts issue. Yes, your honor, there is that testimony and that's why Phoenix sought fees based solely on growing on the single crystal diamond limitation because it was cleaner. It's very,  clear that these diamonds that Novo makes require a lot of  There's a lot of other stuff growing on them. It's not in line with what the  envisioned which is having a diamond that  minimal processing. I want to talk about specific pieces of conduct. She talked about the inspection in India and said it was impossible to  but it could have been done. When you look at the letter it says we decline. There was no we think this is impossible but they kept telling the  court that they didn't have an offer. That went on for quite some time. Supposing the merits were such that by mid  you should have  on this and it was just that. What kind of consequences would have followed from that what's now by assumption mischaracterization of just how difficult it was to get access to the  What work did you do because of that mischaracterization that would be traceable to that mischaracterization by assumption. What kind of work did Phoenix do? Fees have to be limited to the work that's done caused by whatever makes the  exceptional and if we're down to you made the other side some statements that the  could find misleading about access to the facility in India. What legal work was traceable to that misrepresentation? With respect to that particular statement that misleading statement was at the heart of what  argued to keep certain evidence out at the  judgment stage. Carnegie in his brief says that judge Ray cough refused to look at some of this testing that Phoenix did. If you look at the transcript from the  he was influenced by this misstatement from Carnegie jointly about the inspection. A lot of that briefing at the summary judgment stage were directly caused by this misstatement   It's a pattern of conduct. When we talk about the acting... That's generally the case if the basis of the exceptional case determination is extreme meritlessness at some point. At which point no further work should have been done. But is it really the case if there are three misstatements along the way, each one of which caused an hour of extra attorney's work? In Octane Fitness, the Supreme Court talks about the totality of the circumstances. Here we have a pattern of  exceptional   which is about delaying the decision. There then follows a principle associated with the Rembrandt case that says the amount of fees awarded has to be tied to the work that was done because of the basis for the  case determination. I think we're talking about three or four bits of misconduct. But the Rembrandt case deals with I can't remember the exact number but I want to say it's $50 million in attorney's fees and they said we're not going to award $50 million without looking for causation. But I believe that the Rembrandt  says in a run-of-the-mill patent case which is what we have here two patents a small defendant defending itself against a very aggressive patent enforcer it would be appropriate to award all the fees based on a pattern of conduct. I don't think it makes sense to be parsing each individual thing. Phoenix was the victim of a very aggressive enforcement action where at every stage the plaintiffs were trying to push back and  the patent and cooperate with discovery dealing with a third party supplier that didn't want to give Phoenix any confidential information either. I want to talk about joint and several liability. Here it was definitely appropriate to  joint and several liability. It was to receive 10% of any award that it got. It also received money under that contract a substantial amount even outside of what it would have gotten in the  It had the ability to control aspects of the  and also was entitled to information about the  from M7D. Now Carnegie's counsel said we didn't know about some of these actions, but in fact that contract makes it clear that M7D was supposed to  Carnegie of things. It appeared to me kind of weak for the court to find that  and M7D had a close intertwined relationship and that was one of the reasons for the joint liability. But yet you have joint appellants and joint defendants and they rely on each other in different parts of the case and they march together as one in the same direction. Isn't that the case that almost in all situations where there's multiple parties that you can have close and intertwined relationships? What's so unusual about that? Here they held themselves out jointly throughout the case. So it's exactly the same as evident in which the two parties were  represented. You don't always see that when you have a licensor and licensee. I do a lot of pharmaceutical cases often there's separate counsel and the patent owner may not   It was only after it became clear that  might be stuck putting the bill in view of bankruptcy that they tried to separate themselves. Are there any further questions? I didn't touch on the cross appeal so I think my time is seated. Thank you. We'll assure you back to three minutes of your time. Thank you your honor. I'll just briefly address a few points that were raised. I heard argument from opposing counsel about if you look at the patent and if you understand what's going on in this case, judge Rikos had a reasonable basis to assert infringement under all the limitations. I want to address What about the portion where Dr. Capano seems to say seemingly is wrong he really didn't say I'm proceeding on an understanding of the  different from what's in the claim construction. That was the next point I was going to  There are a couple of misstatements in his report. I'm going to point your  to appendix page 1519 paragraph 173. He says I do not interpret growth surface to include the non-diamond or polycrystalline diamond that grows at the single crystal diamond. That should have been an and. That's what he explains later. This is appendix page 1851 and 1852. He says if there's a substantial amount of carbon that's mixed in with     it doesn't look like a diamond anymore. He's not counting that. His theory was relying on the definition of single crystal diamond, which was that it has to have an insubstantial amount of carbon. He wasn't relying on a theory that even if there's some parts where there's single crystal diamond growing, it doesn't matter that there's this hatch mark of carbon around it. Right. And I think the opposing sides expert Dr. Pineo agreed with that. So then it becomes this sort of the muffin tin that Judge Charanto was referencing before. All of that he looked at and he said, I'm not seeing that. That doesn't look like polycrystalline diamond to me. I've seen no evidence that that's pure polycrystalline diamond. That looks like it's mixed with a lot of  The polycrystalline would be the black stuff that's around it. Yeah. So he was looking at that and saying, I don't think that's a diamond anymore. So it's not part of the gross surface. And that's what he explained at appendix pages 1851 and 1852. The polycrystalline diamond which has a lot of graphite in it. Right. He says in his view that's not even diamond. Right. To that extent that it  still make a usable diamond. But he's saying as soon as you begin looking at what's around there, that doesn't seem to be part of the gross surface anymore. He was applying his interpretation of the district court's insubstantial language in that way. Because it didn't say a diamond has insubstantial carbon graphite. The court held that a single crystal diamond has to have insubstantial carbon graphite.  The claim construction says that in the single crystal diamond. The definition of the court's construction of gross surface just was a surface on which a diamond is grown. Right?  generically. That is correct. But he interpreted that as the single crystal diamond in view of the claims. He interpreted the court's construction, which was diamond generically, to be single crystal diamond? In view of reading the  claims, the court didn't say that it was or wasn't. So it was his reasonable interpretation of the claims. Because he wasn't counting the substantial carbon and polycrystalline diamond that was surrounding it as part of the gross surface. Thank you, Your Honor. You thank the party for their argument in favor of this case to be taken under commission.